PEOPLE *v.* PATTERSON

1. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—FAILURE TO PRODUCE—WAIVER.

    A defendant waived the people's duty to produce alleged *res gestae* witnesses where the identities of the witnesses were known to him at the time of trial, the record indicates that defense counsel, by repeatedly referring to the missing witnesses and contending their testimony would be favorable to the defendant, did not want the witnesses produced, and defense counsel, although asked by the court if he wanted to object, failed to make a motion to indorse the witnesses.

2. CRIMINAL LAW—WITNESSES—FINGERPRINT WITNESS—FAILURE TO PRODUCE—WAIVER.

    A defendant waived his right to the indorsement and production of a police fingerprint expert where the record indicates that

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 344.
[3] 29 Am Jur 2d, Evidence § 321 *et seq.*
[4] 29 Am Jur 2d, Evidence § 326.
[5] 53 Am Jur, Trial § 82.
[6] 21 Am Jur 2d, Criminal Law § 146 *et seq.*

the defendant wished to argue the witness's nonproduction to the jury rather than have the witness testify.

3. CRIMINAL LAW—EVIDENCE OF OTHER CRIMES—BASIS OF ARREST.

A police officer's testimony that the defendant, charged with armed robbery, was originally arrested for driving while intoxicated was not prejudicial where it was later established that a blood test had shown that the defendant was not intoxicated under the statutory definition.

4. CRIMINAL LAW—EVIDENCE—PRIOR CRIMES—PROOF OF SCHEME, PLAN, SYSTEM.

Permitting a witness to state, when asked why he and the defendant divided the proceeds of an armed robbery 50-50, that they had always done things in that manner was not error where the prosecution's theory of the case was that the witness and the defendant were acting together in the commission of the crime, the testimony, if it referred to other crimes, indicates the defendant's scheme, plan, or system in doing the act, and the testimony showed that the defendant was an equal partner in the crime (MCLA § 768.27).

5. TRIAL—COURT'S COMMENT—WITNESS'S EVASIVENESS.

A trial court did not impermissibly comment on a witness's evasiveness by saying that the witness was not evasive where the court had been called upon to rule on the issue of evasiveness.

6. CRIMINAL LAW—WITNESSES—WITNESS'S IMMUNITY—INSTRUCTION TO JURY.

Instructing the jury, before telling them that a prosecution witness had been granted immunity, that a judge could grant a witness immunity from prosecution if the judge is satisfied that the interests of justice would be served thereby, was not prejudicial because, while it might be better not to so instruct the jury, the jury will likely draw the inference that the court believes it is more important for the witness to testify than to be prosecuted, where the instructions correctly stated the standards to be used in weighing the credibility of a witness granted immunity and did not foster an impermissible inference in the minds of the jury (MCLA § 780.701).

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 May 10, 1971, at Lansing. (Docket No. 10614.) Decided June 24, 1971. Leave to appeal denied, 386 Mich 766.

Danny Joe Patterson was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Frank R. Knox,* Assistant Prosecuting Attorney, for the people.

*Patrick H. Oliver,* for defendant on appeal.

Before: Danhof, P. J., and Fitzgerald and Quinn, JJ.

Danhof, J. After a jury trial the defendant was convicted of armed robbery. MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797). He now appeals.

On March 31, 1969, a party store in Drayton Plains was robbed by one Thomas Cherry. After being sentenced to a long prison term for another offense, Cherry was granted immunity to testify against the defendant.

Cherry testified that on the evening of March 31, 1969, he was a passenger in his own car, a 1965 dark burgundy Mustang which the defendant was driving. Cherry further testified that the defendant entered the store and bought some beer and popcorn. The two then decided that Cherry would rob the store. Cherry took a pistol that he was carrying in the car and committed the crime. The defendant then picked up Cherry and the two drove to a drive-in restaurant where they divided the proceeds equally.

The first issue raised by the defendant concerns the failure of the prosecution to indorse and call two alleged *res gestae* witnesses. When the identity of alleged *res gestae* witnesses is known to the defendant at the time of trial it is necessary that a motion

to indorse be made in order to preserve the issue for appellate review. *People* v. *Dimitroff* (1948), 321 Mich 205, *People* v. *Amos* (1968), 10 Mich App 533. The defendant relies on *People* v. *Dickinson* (1966), 2 Mich App 646 where the question was reached in spite of the fact that an appropriate motion had not been made. However, in *Dickinson,* while no formal motion had been made, the record showed that the defendant had made numerous unsuccessful efforts to secure the witness.

This case stands in stark contrast to *Dickinson.* In this case far from seeking the production of the witnesses it is clear that the defendant's counsel did not want them to be produced. Counsel for the defendant repeatedly referred to the missing witnesses and contended that their testimony would be favorable to the defendant. The trial court saw fit to inquire as to just what counsel's object was and the following ensued:

*"The Court:* Now I ask you specifically, are you challenging the court's attention to the alleged failure of having the Iakovides' names on the information?

*"Mr. Oliver:* I will at the proper time, your Honor.

*"The Court:* Let's do it now and then we will have something specific before us. There is nothing in the record which goes to indicate that they are *res gestae* witnesses.

*"Mr. Oliver:* Well, I think at the proper, they will be, at the proper time they will be."

No motion to indorse was ever made, and it is clear that counsel for the defendant made a deliberate choice not to seek indorsement. In so doing he waived the witnesses' production.

The defendant contends that a police fingerprint expert should have been indorsed and produced.

We conclude that the defendant waived production of this witness. We particularly note the following exchange:

"*The Court:* Let me ask you another thing before I let you make your dissertation on this subject. Are there any police records that you want that you would like to have to see or put in evidence? If so, let's mention that. That is the first question.

"*Mr. Oliver:* No, your Honor.

"*The Court:* Well, other than bringing out the fact that there were fingerprint tests made, which did not reveal the respondant, which is now before the jury, do you intend to pursue the theory that the police officers abused or neglected duty in that they did not tell the prosecutor to place upon the original warrant or the original complaint the names of all witnesses or did not recite the witnesses who had something to do with fingerprints?

"*Mr. Oliver:* No, your Honor."

It appears that counsel for the defendant did not want the production of the fingerprint expert. Instead he wished to argue nonproduction to the jury. In making this choice he waived any right that he had to have the witness indorsed and produced.

The defendant contends that a police officer made an impermissible reference to another crime when he testified that the defendant was originally arrested for driving while intoxicated. Because it was later established that a blood test had shown that the defendant was not intoxicated under the statutory definition we find no reversible error.

The defendant contends that it was error to admit into evidence two pistols, two boxes of shells, and a holster found in the car at the time of his arrest. This issue is governed by *People* v. *Miner* (1970), 22 Mich App 673, and no error occurred.

The defendant contends that the prosecution improperly elicited a reference to other crimes during the direct examination of Thomas Cherry. This issue is based on the following exchange:

"*A.* Going down Woodward Avenue. At that time I had the money out. We started dividing it.

"*Q.* Do you know how much of it you took?

"*A.* It was half of it. I can't remember really what it was, all of it, the whole amount now. I think it was $70, $80 apiece, close to $100 apiece, I think.

"*Q.* How did you split the money?

"*A.* Fifty-fifty.

"*Q.* Was there any conversation about splitting that money?

"*A.* No, sir.

"*Q.* How you would split it?

"*A.* No, sir.

"*Q.* How did you happen to arrive at the fifty-fifty figure, if you can recall?

"*A.* That is the way me and Danny always have done things, just half and half."

Assuming that this statement is in fact a reference to other crimes, its admission was not error. The prosecution's theory was that the defendant and Thomas Cherry were acting together in committing the crime. Inquiry into the manner in which the proceeds were divided is proper because it would tend to show that they were acting pursuant to a plan. If the answer that the two had always done things that way is in fact a reference to other crimes it is admissible under MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050), because it tends to show the defendant's scheme, plan, or system in doing the act. This testimony tends to indicate that the defendant was an equal partner in the crime and to negate any idea that he was innocently on the scene.

The defendant contends that the trial court made an impermissible comment when it stated that a witness was not being evasive. This claim is based on the following exchange:

"*Mr. Boyer: (interrupting)*: Your Honor, I object. This is all hearsay testimony. It is not proper.

"*Mr. Oliver:* Your Honor, the court ruled on this, this witness being rather evasive.

"*The Court:* I don't think the witness has been evasive, and the remark is objectionable."

It is difficult to see what other course the trial court could have followed. Counsel for the defendant put the whole question of evasiveness in issue. The trial court had to rule on whether the witness was being evasive. The court concluded that the witness was not being evasive and after a review of the testimony we cannot say that this conclusion was erroneous.

The defendant contends that he was prejudiced when the trial court instructed the jury that a judge could grant a witness immunity from prosecution if he is satisfied that it is in the interest of justice that such immunity be granted. The language complained of is taken directly from the immunity statute. MCLA § 780.701 (Stat Ann 1971 Cum Supp § 28.1287(101)).

The defendant argues that this instruction carried the implication that the trial court believed that it was more important that the jury hear Cherry's testimony than it was that Cherry be prosecuted for the crime. While it might be better practice not to read this portion of the statute to the jury it is likely that the jury will draw this inference simply from the fact that there has been a grant of immunity. Furthermore, in reviewing jury instruc-

tions, we must read them as a whole. *People* v. *Hancock* (1950), 326 Mich 471, *People* v. *Robinson* (1968), 11 Mich App 162. The trial court gave a lengthy and correct instruction on the standards to be used in weighing credibility and it stated specifically that these standards should be applied to Thomas Cherry. The court then called to the jury's attention the fact that Cherry had been granted immunity. The court also gave the following instruction:

"You are not to assume the court has any opinion in this case because the determination of guilt or innocence lies solely in your hands and you should not be influenced by my opinion, if I had one."

When the instructions are viewed in their entirety we find that the court did not foster an impermissible inference in the minds of the jurors. Rather, the court did its best to counteract the effect of an inference that was already there.

Affirmed.

All concurred.